IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HELEN RYERSON | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | CIVIL ACTION NO. _____ |
| v. | § | |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER, SOCIAL SECURITY | § | JURY TRIAL DEMANDED |
| ADMINISTRATION, | § | |
| | § | |
| DEFENDANT. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Helen Ryerson ("Plaintiff" or "Ryerson") hereby files, through her counsel of record, this Original Complaint under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") against Caroyln W. Colvin, Acting Commissioner, Social Security Administration ("Defendant" or "SSA"). This Complaint challenges the July 31, 2015 Final Decision of the Office of Civil Rights and Equal Opportunity of the SSA. Plaintiff would respectfully show the Court as follows:

### I. JURISDICTION AND VENUE

1. This court has jurisdiction because this controversy is based upon federal questions under Title VII, 42 U.S.C. §§ 2000e et seq and the ADEA, 29 U.S.C. §§ 621 et. seq.

2. Venue for all causes of action stated herein lies in the Northern District of Texas, Dallas Division, because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of the Northern District of Texas.

### II. PARTIES

3. Plaintiff Helen Ryerson is an individual residing in Collin County, Texas.

4. Carolyn W. Colvin is the Acting Secretary Commissioner for the Social Security Administration. She may be served under FRCP 4(i) by serving the United States Attorney for the Northern District of Texas with service of process, a copy of the summons and complaint by registered mail to the "civil-process clerk" at the office of the US Attorney for the Northern District of Texas, with a copy of the summons and complaint by certified mail to the U.S. Attorney General, Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530 and a copy of the summons and complaint by certified mail to Carolyn W. Colvin, Acting Secretary Commissioner for the Social Security Administration.

### III. FACTS APPLICABLE TO ALL COUNTS

5. Plaintiff Helen Ryerson has been a licensed lawyer for over 20 years.  She received her a J.D. and LL.M. from Georgetown University Law Center.  Following law school, Plaintiff gained transactional and litigation experience working for Ralph Nader, for the Associate General Counsel at the Headquarters of a major energy company, the then General Counsel of the Kennedy Center, and a boutique litigation law firm.

6. Plaintiff worked for SSA at the D.C. Hearing Office from 1995 to 2000.  She took a position with Deloitte & Touche in 2000 and rejoined SSA in 2004 working for Dallas North Hearing Office ("DLN").

7. In March 2009, the Regional Chief Judge Joan Parks Saunders at the Regional Office (RO) of Region VI provided Plaintiff a three (3) months Detail to RO, to work on legal matters at the RO. For the three months, Plaintiff worked on numerous legal matters for Ms. Saunders, including resolution of a major legal matter for the Region that the Region had not been able to resolve for years.  Plaintiff prepared legal presentations for Ms. Saunders and prepared legal memoranda for HQ on behalf of Ms. Saunders.   At the end of the three months, Ms. Saunders made Plaintiff a

permanent employee of the RO.

8. From the outset of Plaintiff's work at the RO, Plaintiff faced a hostile work environment.  As an attorney of Chinese ethnicity, she was deemed "cheap labor" as she did the work of many while paid for the work of one.

9. In or around November 2009, Ms. Saunders, Kevin Portz then GS 15 Regional Management Officer (RMO), and GS 14 Regional Attorney Tim Stewart, appointed Plaintiff to head Region VI's ALJ bias/misconduct caseload.  In this position, Plaintiff had a caseload for five states and about 17 offices for Region VI.  The caliber of Plaintiff''s work was such that SSA Headquarters The Office of the Chief Judge used Plaintiff's work to train SSA's 9-10 GS 14 Regional Attorneys.  Although this work has always been paid at GS 14, Plaintiff was paid at GS 13, which work Plaintiff took on and in addition did the tasks formerly done by 6-7 employees.  Further, Ms. Saunders, refused to promote Plaintiff to GS 14 while she paid or promoted to GS 14 lesser qualified employees such as Beth Malone.

10. From 2009 to 2011, Plaintiff continued handling the Region's ALJ bias/misconduct caseload. During this time, Ms. Saunders refused to place Plaintiff in the RO Legal Team corridor.  Ms. Saunders instead placed Plaintiff in GS 9 no-window offices, and then placed Plaintiff in the corridor for Administrative clerks/analysts.  Ms. Saunders sandwiched Ms. Ryerson, whose work as an attorney necessitated an office with insulation that does not allow audible volume, in an uninsulated office between two clerks.  Plaintiff repeatedly informed her GS 14 and GS 15 supervisors and Ms. Saunders that the two clerks constantly harassed Plaintiff to preclude her from work and that forced her to take leave from work. The harassments of the two clerks included racial slurs, staring down Plaintiff when she passed them in the hallway, laughing at Plaintiff when she passed them, turning off Plaintiff's lights when she is in the office working,

PLAINTIFF'S ORIGINAL COMPLAINT – PAGE - 3

flinging open Plaintiff's door when she had closed it, and placing the plastic tree in the corridor to block Plaintiff's entrance an exit from her office.  Ms. Saunders refused to move the two clerks and instead suggested that Plaintiff, a GS 13 attorney, move to a GS 9 windowless office, while the clerks (of the same race as Ms. Saunders), who were GS 11-12, were in GS 13 window offices formerly occupied by GS 13 attorneys.

11.  In August 2011, Plaintiff filed a formal complaint against the two clerks due to their harassment.  Plaintiff continued to complain to her supervisors and to Ms. Saunders in September 2011 that the clerks were acting together to harass Plaintiff including walking back and forth in front off Plaintiff's office staring at Plaintiff with menacing looks to intimidate Plaintiff.

12.  After Plaintiff filed the formal complaint of harassment against the clerks, Ms. Saunders immediately attempted removal of Plaintiff out of the RO to DLN.  The Union, however, interceded to stop Ms. Saunders' actions.  Ms. Saunders then began steps to remove Plaintiff to Dallas Processing center (DPC).  As a result of the above events, Plaintiff was required to take leave due to emotional and metal distress.

13.  Upon Plaintiffs return to work in December 2011, Ms. Saunders requested to meet with Plaintiff on or about December 12, 2011.  Ms. Saunders explained to Plaintiff that Plaintiff "had to go" because of her complaint of harassment and that Ms. Saunders had already completed the process of removing Plaintiff to DPC under the pretext of a DPC Memorandum of Understanding ("MOU").  Plaintiff objected to the lack of due process with the above move.   Plaintiff also objected that the DPC MOU that moved DPC employees to their new office, does not apply to RO employees to move RO employees to DPC.  Ms. Saunders stated that she would claim Plaintiff had always worked at DPC to bootstrap her claim that DPC MOU therefore applies to Plaintiff - this despite the fact that Plaintiff at no time had stepped foot in DPC, never had an office at DPC,

has never been a part of DPC, has never been in DPC communications or meetings, had never agreed to work at DPC and in fact was specifically put in RO legal Team. At this point, Plaintiff asked to be transferred out from under Ms. Saunders' control. To execute this transfer, Ms. Saunders had Fay Adams the then new GS 15 Regional Management Officer, meet with Plaintiff to execute the transfer agreement out of the control of Region VI under Ms. Saunders. Throughout December 2011, Plaintiff worked to provide necessary information and documents to Fay Adams to complete the transfer. Plaintiff detrimentally relied on Ms. Saunders' agreement to transfer Plaintiff out of Region VI, and specifically to Dallas Office of General Counsel, and was induced to not pursue Union actions against Ms. Saunders.

14. On January 6, 2012, Ms. Saunders did a 180 from the parties December 12, 2011 transfer agreement that was in the process of implementation by Fay Adams, and issued an order removing Plaintiff to DPC by the following Monday. Plaintiff objected to Saunders' efforts to move Plaintiff to DPC and was again forced to take leave to deal with the health conditions caused by stress associated with the above events.

15. On January 18, 2012, while Plaintiff was on leave, Plaintiff's office (including locked cabinets containing personal information of Plaintiff and her family such as bank accounts, social security numbers, stock, attorney-client privileged communication regarding her family) was ransacked at the direction of Ms. Saunders. This information was then left accessible to the entire office including those who harassed Plaintiff.

16. On January 30, 2012, Plaintiff reported the conduct of Ms. Saunders to the Office of Special Counsel, FBI, as well as to then Commissioner Michael Astrue and Deputy Commissioner Glen Sklar. Later that afternoon, Peter Jung as directed by Ms. Saunders, made clear to Plaintiff that she would commence disciplinary proceedings against Plaintiff for her complaints/whistleblowing

to the Commissioner.  Ms. Saunders ordered Ms. Ryerson not to report Ms. Saunders actions to her superiors at HQ.  Plaintiff subsequently confirmed with HQ that in accordance with the Chain of Command, Plaintiff had a duty to report illegal actions to her superiors at HQ.

17.  Ms. Saunders wasted little time in targeting Plaintiff by commencing disciplinary charges while making it impossible for Plaintiff to perform her duties.  Ms. Saunders began marking Plaintiff AWOL on or about February 1, 2012 and otherwise stripping Plaintiff of her pay even though she was on leave in accordance with the Union contract and also while she was in the office.

18. Plaintiff filed a charge with the EEOC on or about February 6, 2012 outlining her complaints against Saunders and other managers and co-workers for their acts of discrimination and harassment.

19.  On or about May 3, 2012, Plaintiff returned the office after the exhaustion of her leave.  Plaintiff learned at this point that, despite a clear agreement in accordance the Union contract that Plaintiff would not be charged AWOL, she had been listed as AWOL various dates from about February 1 to May 2012.  In addition, Plaintiff's times sheet for February 6, 2012 was altered, when Plaintiff was in the building and was on duty for 8 hours and signed in and out on the timesheet for the 8 hours.  The fact that Plaintiff was in the building is also evidenced by the fact that Plaintiff personally met with EEO personnel regarding how to file a charge of discrimination that day.

20.  As of May 3, 2012, and at all times since May 3, 2012 Plaintiff has been required under the threat of being listed as AWOL, to sign in and to work at DPC, an office to which she never agreed to work, an office to which she has objected to working in.

21. Plaintiff's filing of formal EEO charge intensified the retaliation as Defendant began manipulating records of Plaintiff's performance to fabricate performance issues. Among other things, Plaintiff's performance statistics were manipulated by refusing to count her downtime, by demanding that she perform tasks by time certain not demanded of other attorneys, by refusing to assign her more than one case at a time to allow her to manage her workload independently allowed for other SSA attorneys. Peter Jung also ordered that all of Plaintiff's communications to others, be forwarded to him, in an effort to further target Plaintiff.

22. In addition, upon Plaintiff's return to work in May 2012, Plaintiff was subjected to a Weingarten disciplinary proceeding in connection with her complaints regarding the ransacking of her office on or about January 30, 2012.

23. In June 2012, Plaintiff filed a formal complaint with Ms. Adams regarding the conduct of Peter Jung including his ransacking of Plaintiff's office. Within three days of making this complaint, Peter Jung issued a written proposal for Fay Adams' signature to suspend Plaintiff, without providing notice of charges or any opportunity for Plaintiff to respond, prior to the issuance of the proposal to suspend.

24. From June to August 2012, Plaintiff cooperated with an SSA HQ investigation into the conduct of officials at Region VI including Ms. Saunders and Ms. Adams. During this time, in August 2012, under the order of Fay Adams GS 15, Plaintiff was instructed that she was not to communicate with ALJs when it is Plaintiff's job to communicate with and advise ALJs on legal matters. Confused by this instruction Plaintiff sought clarification from SSA Headquarters and was instructed that Kim Hudson at HQ would contact Ms. Adams regarding Ms. Adams' order to Plaintiff. One business day after seeking the above clarification from HQ regarding Ms. Adams' order to Plaintiff, Plaintiff was suspended by Ms. Adams who suddenly signed Peter's Jung's

proposal to suspend issued more than two months earlier.  Ms. Adams also simultaneously terminated Plaintiff's transfer to Dallas Office of General Counsel (which transfer Ms. Saunders agreed to in December 2011, and which transfer was again agreed to by Ms. Adams herself beginning in or around June 2012.)  The basis of Plaintiff's suspension was alleged time sheet discrepancies.  Specifically, Ms. Adams would not allow Plaintiff to correct time sheets even though similarly situated employees were regularly permitted to do so and Plaintiff herself was allowed to do so prior to filing her complaints.

25.  In November 2012, Plaintiff was subjected to a Weingarten interrogation to intimidate Plaintiff in violation of HQ orders to RO.

26.  The following additional acts evidence discrimination and/or retaliation against Plaintiff:

• refusing to call Plaintiff back to work after the Fall 2013 government furlough while calling all other similarly situated employees back;

• referring to Plaintiff as  "Jackie Chan" and "Lee" and greeting her with "Sayonara";

• forcing Plaintiff to move her car while allowing similarly situated employees to park in the same area;

• accusing Plaintiff of lying about being unable to read illegible writings of an ALJ while believing the same complaints of other attorneys about the same ALJ;

• denying Plaintiff overtime while granting overtime requests of similarly situated employees;

• repeatedly and arbitrarily and terminating and denying Plaintiff's legal right under the union contract to work at home while granting such requests for similarly situated employees which termination of work at home has repeatedly forced Plaintiff to take leave;

• refusing to pay Plaintiff for time worked;

• demanding that Plaintiff perform a task in 7 minutes when due to computer functions, the task took over 1/2 -1 hour;

• Improperly marking Plaintiff AWOL;

• failing to notify Plaintiff of job opportunities provided to other attorneys to transfer to Dallas Office of General Counsel and filling those positions with attorneys of lesser education, experience, accomplishments;

• defaming Plaintiff to all managers instructed to target Plaintiff and precluding any chance for Plaintiff to be transferred;

• manipulating Plaintiff's records including her time sheets, leave request she submitted, leave

donation request she submitted, her performance statistics, her downtime, and her duty station.

- suppressing the numerous commendations for Plaintiff from numerous ALJs for the purpose of negatively impacting Plaintiff's reviews; fabricating false statements about Plaintiff's work while not reviewing the deficient work of other attorneys under similar standards;

- demanding that Plaintiff perform secretarial work not demanded of other attorneys;

- charging Plaintiff with lying that she is ill with headaches or stomach pain documented by two treating physicians;

- refusing to allow Plaintiff to work with IT to fix her laptop to enable her to work at home, while allowing similarly situated employees to work with IT to fix their laptops to enable them to work at home; prohibiting Plaintiff from contacting IT directly while not prohibiting others from doing so causing Plaintiff to have inordinate delays in work which downtime adversely affects Plaintiff's statistics;

- refusing to grant Plaintiff one day of sick leave when her husband died in October 2012 stating that it was "inappropriate" to be sick when her husband died, demanding to see Plaintiff's marriage certificate, demanding that Plaintiff "prove" that her husband is a "member of the family," and demanding other personal documentation no other employee is required to submit to prove their marriage to their husband which personal documentation was distributed to those who were not authorized by law to possess such information;

- assigning Plaintiff 16-30 cases at a time while assigning similarly situated employees 3-4 at a time, and then charging Plaintiff for untimely performance even when she was on leave.

27.   As a result of the above acts of discrimination and retaliation, Plaintiff has been required to take repeated extensive leave on multiple occasions in the last four years due to her declining emotional and physical health which has deteriorated to the point that it recently culminated in a life threatening condition requiring immediate surgery.  In addition, no less than two of Plaintiff's physicians have requested a total of three times, that Plaintiff be transferred out from Saunders' control.  To date Plaintiff's requests to be moved from Saunders' control have been ignored and she continues to be subjected to differential treatment based on her race, national origin and age.

## IV.  CONDITIONS PRECEDENT

28.   On July 31, 2015 and following an investigation into Plaintiff's allegations, SSA Office of Civil Rights and Equal Opportunity issued a final agency decision triggering a 90 day right to sue

for Plaintiff in Federal Court.  By this action, Plaintiff challenges the findings of that decision.

## V. CAUSES OF ACTION

### FIRST COUNT - RACE AND NATIONAL ORIGIN DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII

**29.** The foregoing paragraphs of this Complaint are incorporated in this Count as fully as if set forth at length herein.

30. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely Chinese.

31. Defendant is an employer within the meaning of Title VII.

32. All conditions precedent to filing this action for discrimination under Federal law have been met.

33. Defendant has violated Title VII, as amended, by discriminating and/or retaliating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's race and national origin, and because Plaintiff engaged in protected activity, including reporting violations of Title VII.  Defendant further created or contributed to the creation of a hostile work environment based on Plaintiff's race and national origin.

34. Defendant has engaged in a single, continuous course of conduct of discrimination and retaliation against Plaintiff because of her race and national origin in order to destroy Plaintiff, her career, and her professional life.

35. Defendant maliciously and recklessly violated its own established rules and procedures.   Such discrimination by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from pay for GS 14 work for 3 years from 2009 - 2012, expungement of all negative actions on her record at DPC, past and future pecuniary losses, emotional pain and suffering, all medical and other losses,  reimbursement of the loss of extensive leave due to hostile work environment, reimbursement of pay due to illegal AWOL charges, inconvenience, loss of enjoyment of life and other non pecuniary losses. Further, this discrimination was done by Defendants with malice or with reckless indifference to Plaintiff's protected rights. Plaintiff is therefore also entitled to recover punitive damages.

36.  Plaintiff is entitled to an award of attorney fees and costs under Title VII.

### SECOND COUNT DISCRIMINATION IN VIOLATION OF THE ADEA

37. The foregoing paragraphs of this Complaint are incorporated in this Count by reference as fully as if set forth at length herein.

38. Plaintiff is an individual who is over 40 years old. At the time of the discrimination the Plaintiff was over 40 years old.

39.  Defendant has intentionally discriminated against Plaintiff because of her age.

40.  All conditions precedent to filing this action for age discrimination under state and federal law have been met.

41. Defendants have engaged in a single continuous course of conduct of discrimination against Plaintiff because of Plaintiff's age.

42. Such discrimination by Defendants against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendants for back pay, benefits, future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, other non-pecuniary losses, and compensatory damages. Further, this discrimination was willful. Plaintiff is therefore also entitled to recover liquidated damages. Plaintiff is also entitled to recover all costs of Court and attorney's fees.

## THIRD COUNT-RETALIATION

43. The foregoing paragraphs of this Complaint are incorporated in this Count by reference as if set forth at length herein.

44. Defendant has retaliated against Plaintiff for engaging in protected activities. Defendant has thereby intentionally engaged in unlawful employment practices prohibited by Title VII and the ADEA.

45. All conditions precedent to filing this action for discrimination and retaliation under state law have been met. Plaintiff timely filed her charge of retaliation based upon protected activities.

46. Defendant has engaged in a single continuous course of conduct of retaliation against Plaintiff because of Plaintiff's protected complaints of discrimination and harassment based upon Plaintiff's race, national origin and age.

47. Such retaliation by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other non- pecuniary losses. Further, this retaliation was done by Defendant with intentional malice or with reckless indifference to Plaintiff's protected rights. Such retaliation constitutes gross, wanton, reckless, and/or intentional violation of Plaintiff's rights. Plaintiff is therefore also entitled to recover punitive and/or liquidated damages. Plaintiff is also entitled to recover all costs of Court, and attorney's fees under Title VII and the ADEA

## JURY DEMAND

Plaintiff hereby requests a trial by jury.

## VI. REQUEST FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have and recover the following relief against Defendant:

(i)     Judgment for actual damages in the amount of past and future lost earnings and benefits and damages to past and future earnings capacity as well as lost retirement benefits;

(ii)    Judgment for back pay as allowed by law;

(iii)   Judgment for past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other non pecuniary losses;

(iv)    Damages for past and future mental anguish, emotional distress, and physical distress;

(v) Exemplary damages in an amount to be determined by the trier of fact;

(vi) Prejudgment and post judgment interest at the maximum legal rate;

(vii) All costs of Court;

(viii) Attorneys' fees;

(ix) Injunctive relief including correction of Plaintiff's valid duty station is RO (not DPC) and immediate transfer out of Region VI to Dallas Office of General Counsel at GS-14.

Such other and further relief to which Plaintiff may be justly entitled.

Dated October 28, 2015

> Respectfully submitted,
>
> /s/ Clay A. Hartmann
>
> Clay A. Hartmann
>
> Attorney-in-Charge
> Texas State Bar No. 00790832
> THE HARTMANN FIRM, PC
> 6677 Gaston Avenue
> Dallas, Texas 75214
> 214-828-1822
> clay.hartmann@thehartmannfirm.com
>
> **ATTORNEY FOR PLAINTIFF HELEN RYERSON**