# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **HELEN RYERSON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:15-CV-3509-S-BK** |
| | § | |
| **NANCY A. BERRYHILL, Acting** | § | |
| **Commissioner of Social Security** | § | |
| **Administration,** | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE[1]

Pursuant to the District Judge's *Standing Order of Reference*, Doc. 30, this case has been referred to the United States magistrate judge for pretrial management. The Court now considers the parties' cross-motions for summary judgment. Doc. 45; Doc. 47; Doc. 55. As detailed herein, Plaintiff's motion should be **DENIED**, and Defendant's motion should be **GRANTED**.[2]

---

[1] In her summary judgment briefing, Plaintiff renews her motion to disqualify the undersigned, alleging that the undersigned's "publicly stated position, published by the Dallas Bar Association, that favors reverse discrimination, that favors affirmative action for African Americans . . . poses a direct conflict of interest in this EEO case in which Plaintiff seeks relief from reverse discrimination and where Defendants are African Americans." Doc. 48 at 6 n.1; Doc. 78 at 5 n.1. Chief Judge Lynn previously denied Plaintiff's original motion to disqualify, which raised the same arguments. Doc. 44. Plaintiff then filed motions to substitute a different magistrate judge, Doc. 61, and for recusal, Doc. 64, which the undersigned ordered struck due to Plaintiff's failure to include a certificate of conference. Doc. 63; Doc. 65. Plaintiff refiled a compliant motion for recusal based on the same grounds of alleged bias. The undersigned denied the motion. Doc. 74. Plaintiff appealed the order, and Chief Judge Lynn overruled Plaintiff's objections and affirmed the order. Doc. 84. To the extent Plaintiff now renews her recusal motion, it is **DENIED** for the reasons stated in the Court's prior order. Doc. 74.

[2] Because Plaintiff's *Motion for Summary Judgment* is largely redundant with her response to Defendant's summary judgment motion, the Plaintiff's summary judgment motion is only addressed directly herein when there are significant differences between the two.

## I.      PROCEDURAL HISTORY

In October 2015, Plaintiff, an attorney over the age of 50 and of Chinese descent, filed a counseled complaint against Defendant, her employer, alleging that Defendant had violated Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.* Doc. 1 at 1, 3. In brief, Plaintiff contends that two of her co-workers harassed her, and her supervisor and others discriminated against her by trying to get her transferred, commencing disciplinary charges against her, docking her pay, and retaliating after Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Doc. 1 at 3-9. Plaintiff raised the following counts in her complaint: (1) race and national origin discrimination and harassment, in violation of Title VII; (2) discrimination, in violation of the ADEA; and (3) retaliation under Title VII and the ADEA. Doc. 1 at 10-11. Both parties have now moved for summary judgment on all claims, with Plaintiff proceeding *pro se*.[3]

## II.     FACTS

In connection with their summary judgment motions, the parties submitted evidence which reveals the following: Plaintiff serves as a senior attorney for the Social Security Administration, providing legal advice and drafting opinions for the administrative law judges ("ALJs") who decide disability claims. Doc. 57 at 329. At the times relevant to this lawsuit, Joan Parks-Saunders, an African American woman, was the Chief ALJ for the region and Plaintiff's third-line supervisor. Doc. 57 at 208. The two levels of management between Parks-

---

[3] The Court notes that Plaintiff filed two motions for summary judgment, Doc. 45 and Doc. 47, as well as virtually identical briefs in support of her motion for summary judgment, *cf.* Doc. 45 *with* Doc. 48. The Court presumes that Plaintiff intended for the second motion and brief to supersede the first. As such, Plaintiff's first summary judgment should be terminated as moot.

Saunders and Plaintiff consisted of a second-line supervisor named Fay Adams, also an African American woman, and a first-line supervisor named Peter Jung, a man of Korean descent. Doc. 57 at 208.

The particular discriminatory/retaliatory actions about which Plaintiff complains are as follows: (1) commencing in November 2009 and through the present, Defendant paid her at the GS-13 level despite the fact that she was performing GS-14 level work, Doc. 1 at 3; (2) from 2009 to 2011, Park-Saunders refused to office Plaintiff in the legal team corridor, instead keeping her in a corridor for administrative clerks/analysts, Doc. 1 at 3; (3) her office in that corridor was between two clerks who spoke loudly, making it difficult for Plaintiff to work, Doc. 1 at 3-4; (4) the two clerks harassed Plaintiff by and through intimidation tactics, laughter, turning off her office lights while she was working, and the like, Doc. 1 at 3-4; (5) Parks-Saunders refused to relocate the clerks despite Plaintiff's request and instead offered to relocate Plaintiff to a windowless office, Doc. 1 at 4; (6) in December 2011, Parks-Saunders informed Plaintiff that she would be placed in the Dallas Processing Center ("DPC"), over Plaintiff's objections, and told her that she would claim Plaintiff had always worked in DPC, Doc. 1 at 4-5; (7) in December 2011, Parks-Saunders agreed to transfer Plaintiff to an area that Parks-Saunders did not supervise, but reneged on her agreement the following month and transferred Plaintiff to DPC instead, Doc. 1 at 5; (8) when Plaintiff took leave to deal with the health conditions she suffered as a result of stress, Jung "ransacked" her office and left her private information accessible to the rest of the office, Doc. 1 at 5; (9) on January 30, 2012, Plaintiff reported certain of Parks-Saunders' "illegal actions" to the Federal Bureau of Investigation, the Social Security Commissioner, and others, after which Parks-Saunders retaliated against Plaintiff by marking her absent without leave ("AWOL") from February to May 2012, even though Plaintiff was on

3

permitted leave, Doc. 1 at 6; (10) since May 2012, Plaintiff has been required to work at DPC

over her objections, Doc. 1 at 6; (11) after Plaintiff filed her EEO charge on February 6, 2012,

Defendant retaliated against her by fabricating performance problems, demanding that she

complete tasks in a timeframe not applied to other attorneys, refusing to allow her to manage her

caseload independently, and subjecting her to a disciplinary proceeding in connection with her

complaints about the alleged ransacking of her office, Doc. 1 at 7; (12) in June 2012, after

Plaintiff complained about Jung ransacking her office, Jung proposed that Plaintiff be suspended

for timesheet discrepancies, Doc. 1 at 7-8; and (13) in August 2012, Adams implemented

Plaintiff's suspension and terminated her planned transfer to a different office in retaliation for

Plaintiff asking "headquarters" for clarification about an instruction Adams had given her, Doc.

1 at 7-8.

    At the conclusion of her factual allegations, Plaintiff also proffers a laundry list of other

acts that she alleges demonstrate "discrimination and/or retaliation" against her: (1) not being

called back to work after the Fall 2013 government furlough while other similarly situated

employees were called back, Doc. 1 at 8; (2) references to Plaintiff as "Jackie Chan" and/or

"Lee" and greeting her with "sayonara," Doc. 1 at 8; (3) forcing Plaintiff to move her car while

allowing similarly situated employees to park in the same area, Doc. 1 at 8; (4) accusing Plaintiff

of lying about being unable to read illegible writings of an ALJ while believing similar

complaints by other attorneys about the same ALJ, Doc. 1 at 8; (5) denying Plaintiff overtime

while granting the overtime requests of similarly situated employees, Doc. 1 at 8; (6) not

allowing Plaintiff to work at home while granting such requests for similarly situated employees,

Doc. 1 at 8; (7) demanding that Plaintiff perform tasks in an unreasonable time frame, Doc. 1 at

8; (8) failing to notify Plaintiff of job opportunities provided to other attorneys and filling those

4

positions with attorneys of lesser education, experience, and accomplishments, Doc. 1 at 8; (9) defaming Plaintiff to all managers and instructing them to "target" her, Doc. 1 at 8; (10) suppressing Plaintiff's various commendations from ALJs to negatively impact her performance reviews, Doc. 1 at 9; (11) fabricating false statements about Plaintiff's work while not reviewing the deficient work of other attorneys under similar standards, Doc. 1 at 9; (12) demanding that Plaintiff perform secretarial work not required of other attorneys, Doc. 1 at 9; (13) accusing Plaintiff of lying about her headaches and stomach pain, Doc. 1 at 9; (14) refusing to allow Plaintiff to work with office computer staff to fix her laptop so she could work from home while allowing similarly situated employees to do so, Doc. 1 at 9; (15) prohibiting Plaintiff from contacting information technology staff directly while not prohibiting others from doing so, Doc. 1 at 9; (16) refusing to grant Plaintiff one day of sick leave after her husband died, Doc. 1 at 9; (17) demanding to see documentation that Plaintiff was married, Doc. 1 at 9; (18) assigning Plaintiff 16-30 cases at a time while assigning similarly situated employees less work, Doc. 1 at 9; and (19) charging Plaintiff for untimely performance even when she was on leave, Doc. 1 at 9.

## III.    APPLICABLE LAW

### A. Title VII and ADEA Framework

Title VII and the ADEA provide, in relevant part, that an employer may not "fail or refuse to hire" an applicant for employment "because of" the applicant's race, sex, or age. 42 U.S.C. § 2000e-2(a)(1) (race/national origin); 29 U.S.C. § 623(a)(1) (age). Title VII was the model for the ADEA, so the same general law applies to claims under either statute. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 & n.6 (5th Cir. 2009). Under the familiar *McDonnell Douglas* framework, once a plaintiff has made a prima facie showing of discrimination or retaliation, the burden shifts to the employer to show a legitimate, non-

5

discriminatory reason for any adverse employment action. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). An adverse employment action must consist of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (citation omitted). For purposes of a retaliation claim, an adverse employment action is any act that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted).[4] If the employer is successful in showing a legitimate, non-discriminatory reason for an adverse action, the burden shifts back to the plaintiff to provide substantial evidence that the proffered reason is a pretext for the discrimination or retaliation. *Laxton*, 333 F.3d at 578.

   B.  *Anti-Discrimination Law*

The anti-discrimination provisions of Title VII and the ADEA permit plaintiffs to pursue discrimination claims under two distinct theories: disparate impact and disparate treatment. *Smith v. City of Jackson*, 544 U.S. 228, 232 (2005) (holding that the ADEA permits recovery on a disparate impact theory); *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) (holding that both disparate treatment and disparate impact theories are cognizable in Title VII cases). As relevant here, "[d]isparate-treatment cases present the most easily understood type of discrimination . . . and occur where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal quotations, citations, and modifications omitted).

_____

   [4] While the standards differ slightly, the analysis is not significantly different, so the pertinent adverse actions are discussed collectively.

A plaintiff proceeding on a disparate treatment theory of discrimination must provide sufficient evidence to create a genuine issue of material fact as to whether the plaintiff: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) was replaced by someone outside her protected group or was treated less favorably than similarly situated employees outside her protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).

If the discrimination is alleged to have taken the form of harassment creating a hostile work environment, a plaintiff must show that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

*C. Retaliation*

To make out a claim for retaliation under Title VII and the ADEA, a plaintiff must establish that: (1) she engaged in an activity protected by the particular statute; (2) an adverse employment action occurred; and (3) a causal link connects the protected activity to the adverse employment action. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015). An employee engages in a protected activity where she opposes an activity she reasonably believes constitutes unlawful discrimination. Protected activity is "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

An informal complaint may constitute protected activity for purposes of a retaliation claim. *Holland v. Shinseki*, No. 10-CV-0908-B, 2012 WL 162333, at *18 (N.D. Tex. Jan. 18, 2012) (Boyle, J.) (citing *Amanduron v. Am. Airlines*, 416 Fed. Appx. 421, 424 (5th Cir. 2011)). While the complaint need not contain "[m]agic words," it "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Serv.*, 406 Fed. Appx. 837, 840 (5th Cir. 2010) (citations omitted).

D. *Exhaustion Requirement for Federal Employees*

Before a federal civil servant can sue her employer in court for discriminating against her in violation of Title VII, she must first exhaust her administrative remedies. 42 U.S.C. § 2000e–16(c). To that end, the EEOC has promulgated regulations that require, among other things, a federal employee to consult with an EEO counselor prior to filing suit. Specifically, the employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016) (quoting 29 C.F.R. § 1614.105(a)(1)). Failure to notify the EEO counselor in a timely fashion will bar an employee's claim, absent some excuse for the failure. *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992).

Moreover, in order to waive a timeliness objection, the EEOC must make a specific finding regarding whether the claimant's submission was timely. *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992). An agency's decision to accept and investigate a complaint does not suffice to render a claim timely "because agencies may inadvertently overlook timeliness problems and should not thereafter be bound." *Henderson v. United States Veterans Administration*, 790 F.2d 436, 441 (5th Cir. 1986). As is relevant here, the EEOC made no finding regarding the timeliness of Plaintiff's EEOC complaint; thus, there was no waiver of the

untimeliness raised by Defendant and addressed in more detail *infra*. *See generally* Doc. 57 at 202-252 (Final Agency Decision).

The statutory scheme relating to exhaustion differs somewhat when a federal employee brings a claim under the ADEA. In particular, the employee may either pursue her administrative remedies with the EEOC or proceed directly to federal district court. 29 C.F.R. § 1614.105(b)(1); *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5-6 (1991). Once an employee proceeds down the administrative path as Plaintiff did, however, she must completely exhaust those remedies before filing suit in federal court. *Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990).

   *E. Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citation omitted).

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

(citation omitted).  Unsubstantiated beliefs are not competent summary judgment evidence.  *de la O v. Housing Authority of City of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005).  Finally, the

Court "must view the evidence introduced and all factual inferences from the evidence in the

light most favorable to the party opposing summary judgment, but a party opposing summary

judgment may not rest on mere conclusory allegations or denials in its pleadings."  *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (internal alterations omitted) (quoting

*Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)).

## IV.     ARGUMENTS AND ANALYSIS

### A.  *Untimely Claims*

Plaintiff first sought EEO counseling on February 20, 2012.  Doc. 57 at 354.  Defendant

alleges in its summary judgment motion that the following claims of Plaintiff's are thus time-

barred because she did not raise them in the EEO counseling until more than 45 days after the

allegedly discriminatory acts took place: (1) Defendant underpaying Plaintiff commencing in

November 2009, Doc. 56 at 32; (2) starting in 2009, two of Defendants' clerks' harassment of

Plaintiff with unspecified racial slurs, intimidation, laughter, and excessive noise, Doc. 56 at 34-

35; and (3) Plaintiff's assignment to the DPC in March 2010 and the resulting relocation of her

work station to another floor, Doc. 56 at 39-41.[5]

---

[5] Defendant also argues that Plaintiff's assignment to the DPC and the relocation of her
work station do not constitute adverse actions.  Doc. 56 at 39, 41-42.  The Court agrees because
neither action relates to an ultimate employment decision nor would such actions be harmful to
the point that they reasonably could dissuade Plaintiff from making or supporting a charge of
discrimination.  *Burlington*, 548 U.S. at 57; *Pegram*, 361 F.3d at 282.

Plaintiff responds that Defendant's assertion of untimeliness is barred because Defendant's actions "continued through to the date of Plaintiff's filing" and because Defendant did not raise untimeliness as an affirmative defense in her answer. Doc. 78 at 5 n.3.

As Defendant correctly points out, she did in fact raise untimeliness as an affirmative defense in her *Amended Answer*, and the defense is therefore not waived. *See* Doc. 23 at 8 (stating that "to the extent Plaintiff's Original Complaint . . . makes allegations about allegedly adverse events or occurrences for which plaintiff did not timely make contact with an EEO counselor or file a timely administrative claim or properly and timely exhaust all other administrative remedies and properly and timely file suit in federal court, any claims relating to such matters are barred."). Moreover, contrary to Plaintiff's arguments, the failure to promote her,[6] assignment to the DPC, and her subsequent relocation are discrete acts which are not subject to the continuing violation doctrine. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Because Plaintiff did not initiate contact with an EEO counselor within 45 days of the dates of these allegedly discriminatory acts or the effective date of the relevant personnel action, these three claims are untimely and should be dismissed. 29 C.F.R. § 1614.105(a)(1); *Green*, 136 S. Ct. at 1775; *Baker*, 672 Fed. App'x at 361.[7] Plaintiff's claim of harassment by the co-workers in the offices on either side of her is best understood as a hostile work environment claim, which is subject to the continuing violations doctrine. *Heath v. Bd. of Supervisors for S.*

---

[6] To the extent Plaintiff complains of being required to do work outside of her position description for which she was not adequately compensated, that claim is addressed in more detail below.

[7] The Court notes that two of Plaintiff's other claims appear to be time-barred as well, namely Park-Saunders' alleged refusal to place Plaintiff in the legal team corridor or relocate the clerks who were harassing her from 2009 to 2011, Doc. 1 at 3-4. However, these claims are disposed of on other grounds *infra*.

*Univ. and Agric. and Mech. College*, 850 F. 3d 731, 739 (5th Cir. 2017). As such, that claim is addressed on the merits *infra*.

    B. *No Adverse Action*

    Defendant next argues in her summary judgment motion that many of the acts about which Plaintiff complains do not constitute adverse employment actions as a matter of law, to wit: (1) the relocation of her work station in January 2012, Doc. 56 at 41-42; (2) Jung's alleged ransacking of her office, Doc. 56 at 47; (3) Plaintiff being required to attend a "Weingarten" meeting in May 2012 to address her allegedly changing two of her timesheets without permission,[8] Doc. 56 at 52; (4) Defendant's purported refusal to call her back to work following a furlough in 2013 for which she was fully paid retroactively, Doc. 56 at 52; (5) a co-worker's one-time reference to Plaintiff as "Jackie Chan" or "Lee" for which that co-worker was disciplined,[9] Doc. 56 at 53; (6) Plaintiff having to move her car[10], Doc. 56 at 54; (7) Plaintiff's inability to get her laptop fixed and not being permitted to work from home, Doc. 56 at 54; and (8) "other similar matters," Doc. 56 at 54.

----

    [8] *NLRB v. Weingarten*, 420 U.S. 251 (1975).

    [9] The Court recognizes that this type of "name-calling" could, under some circumstances, constitute direct evidence of discrimination. *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) ("A statement or document which shows 'on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action [is] direct evidence of discrimination.'") (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005)). The employee in question in this case apologized to Plaintiff immediately after the remark and, after Plaintiff complained, he was required to undergo sensitivity training. Doc. 57 at 49-50; Doc. 57 at 334. Importantly, Plaintiff has not shown that the remark related to an adverse employment action directed at her. *Herster*, 887 F.3d at 185.

    [10] Plaintiff actually alleges that her car was vandalized repeatedly in the office parking lot, and Defendant refused to investigate it. Doc. 67 at 26. This is not an adverse employment action for the reasons explained *infra*. *Pegram*, 361 F.3d at 282.

In her response, Plaintiff does not address Defendant's arguments, except for that pertaining to the Jackie Chan remark.  Doc. 78 at 16.  As such, Plaintiff has abandoned any argument that the aforementioned acts constituted adverse employment actions for purposes of her discrimination claims.[11]  *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (holding claim abandoned when the plaintiff did not address it in opposition to motions to dismiss and for summary judgment); *Amezquita v. Beneficial Texas, Inc*., 264 Fed. Appx. 379, 387 n.21 (5th Cir. 2008) (holding that argument was abandoned when plaintiff did not raise it in her appellate brief).

Regardless, however, and for essentially the same reasons argued by Defendant, the acts listed by Defendant simply do not constitute adverse employment actions as a matter of law because they do not relate to an ultimate employment decision nor would they be harmful enough to dissuade a reasonable plaintiff from making or supporting a charge of discrimination. *Burlington*, 548 U.S. at 57; *Pegram*, 361 F.3d at 282; *see Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331-32 (5th Cir. 2009) (holding that placing an employee on administrative leave for three weeks at full pay did not constitute an adverse retaliatory action, nor did employer's taking personal items from the plaintiff's desk, changing the locks on her office doors, and the plaintiff being chastised by superiors and ostracized by co-workers because those actions fell into the category of "petty slights, minor annoyances, and simple lack of good manners.") (quoting *Burlington*, 548 U.S. at 68); *see also Layton v. Louisiana*, No. 14-722-JWD-EWD 2017 WL

---

[11] In the briefing of her own motion, Plaintiff refers to some of the acts outlined above (namely, the office ransacking, furlough, car, and work-from-home issues) as support for her hostile work environment claim.  Doc. 48 at 26-27, 29; Doc. 67 at 25-27.  So those alleged acts nevertheless are discussed *infra* in the context of that claim.

6328158, at *8 (M.D. La. Dec. 11, 2017) (holding that searching an employee's coat was not a materially adverse action).

The same can be said for many of the remainder of Plaintiff's other claimed adverse actions, including:

(1) Parks-Saunders' alleged decision to renege on her agreement to allow Plaintiff to transfer to an area not under her supervision, Doc. 1 at 5; *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (5th Cir. 1999) (holding that denial of a purely lateral transfer is not an adverse employment action for purposes of Title VII discrimination claim); *Burger v. Cent. Apt. Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (holding that the denial of a request for a lateral transfer was not an adverse employment action for purposes of employee's retaliation claim even though employee wanted the transfer to shorten his commute, and noting that the determination of whether an employee has suffered an adverse employment action is made using an objective standard).

(2) Plaintiff being required to work at DPC against her will, Doc. 1 at 6; *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 555 (5th Cir. 1997) (holding that merely "undesirable work assignments" do not result in a material adversity to the employee);

(3) The fabrication of Plaintiff's alleged performance problems and demand that she complete tasks more quickly than other attorneys, Doc. 1 at 7; *Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997) (holding that frequent criticism of employee's work and conduct was not a materially adverse action); *King v. Louisiana*, 294 Fed. Appx. 77, 85 (5th Cir. 2008) (holding that unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute adverse employment actions (citing *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000));

14

(4) The refusal to allow Plaintiff to manage her caseload independently; *Messer*, 130 F.3d at 140 (closely monitoring employee's conversations is not an adverse personnel action);

 (5) The accusation that Plaintiff was lying about being unable to read an ALJ's handwriting, Doc. 1 at 8; *Messer*, 130 F.3d at 135 (failure to heed employee's input not materially adverse);

(6) Plaintiff not being allowed to work from home, which is but a petty slight or minor annoyance, Doc. 1 at 8; *Stewart*, 586 F.3d at 332;

(7) The failure to notify Plaintiff of job opportunities provided to others, Doc. 1 at 8; *Stewart*, 586 F.3d at 332;

(8) The "defamation" of Plaintiff to all managers with instructions to them to "target" her in some unspecified manner, Doc. 1 at 8; *Stewart*, 586 F.3d at 332;

(9) The "suppression" of Plaintiff's commendations so as to negatively impact her performance reviews, Doc. 1 at 9; *Boriski v. City of College Station*, 65 F. Supp. 2d 493, 505 (S.D. Tex. Sept. 14, 1999) (negative performance evaluations, even if undeserved, are not adverse employment actions giving rise to actionable retaliation claims);

(10) Plaintiff's work being held to a different standard than that applied to other attorneys, Doc. 1 at 9; *Messer*, 130 F.3d at 140;

(11) The accusation that Plaintiff lied about having headaches and stomach pain, Doc. 1 at 9; *Stewart*, 586 F.3d at 332;

(12) Plaintiff not being permitted to work with office computer staff to fix her laptop when similarly situated employees could do so, Doc. 1 at 9; *Stewart*, 586 F.3d at 332;

(13) Demanding proof that Plaintiff was married, Doc. 1 at 9; *Stewart*, 586 F.3d at 332; and

(14) assigning Plaintiff more cases than were assigned to similarly situated employees,

Doc. 1 at 9; *Watts v. Kroger*, 170 F.3d 505, 512 (5th Cir. 1999) (holding that a reassignment that

requires additional tasks is not materially adverse if it is not accompanied by any other change in

the employee's status).  Accordingly, any causes of action based on the aforementioned acts

should be dismissed.

    *C. Discrimination/Retaliation Claims*

    Based on the foregoing, the remaining acts alleged by Plaintiff that arguably qualify as

adverse employment actions are: (1) Parks-Saunders retaliating against Plaintiff by marking her

AWOL in 2012 even though Plaintiff was on permitted leave, Doc. 1 at 6; (2) Plaintiff's

suspension for changing her time sheets when others were not suspended for the same conduct,

Doc. 1 at 7-8; (3) the denial to Plaintiff of overtime while similarly situated employees were

granted overtime, Doc. 1 at 8; and (4) Plaintiff being denied a day of sick leave after her husband

died, Doc. 1 at 9.

    1. AWOL Status

    Placing an employee on unpaid status such as AWOL could be considered an adverse

action for purposes of establishing a prima facie case.  *Hockman v. Westward Comm'n, LLC*, 407

F.3d 317, 331 (5th Cir. 2004) (holding that the denial of paid or unpaid leave constitutes an

ultimate employment decision).  Even assuming that it is, however, Plaintiff has presented no

evidence that she ever requested paid leave to cover the instances that she was listed as AWOL

for several periods in February 2012 and lost pay as a result.  Moreover, when Plaintiff did

request that annual leave be advanced to her for her March 2012 AWOL, Jung agreed to do so

and reversed those AWOL charges.  Doc. 57 at 59-60; *see Paul v. Elayn Hunt Corr. Ctr.*, 666

Fed. Appx. 342, 347 (5th Cir. 2016) (holding that supervisor's docking employee two days' pay

16

in mistaken belief that employee took unauthorized leave time was not a materially adverse action where the error was promptly corrected); *Kelso v. Paulson*, No. 3:08-CV-961-B, 2010 WL 2163124, at *9 (N.D. Tex. May 4, 2010) (holding that AWOL charges that were subsequently reversed did not constitute an adverse action) (Ramirez, J.), *adopted by* 2010 WL 2163911 (N.D. Tex. May 26, 2010) (Boyle, J.).

Further, Jung noted that Plaintiff was properly designated as AWOL for February 2012 because "she did not follow agency procedures [that he had explained to her several times] for requesting leave, she did not have annual leave to cover her absences, and she did not provide medical documentation to excuse her two-week absence."[12]  Doc. 57 at 59, 61.  Thus, Jung had a legitimate, non-discriminatory reason for designating Plaintiff AWOL for that period, and Plaintiff has not alleged or demonstrated by a showing of substantial evidence that Jung's reason was pretextual.  *Laxton*, 333 F.3d at 578.

Additionally, Jung, who was Plaintiff's direct supervisor at the time, is the same race as Plaintiff and was also over the age of 40, albeit eight years younger than Plaintiff.  Doc. 57 at 208.  That Plaintiff's supervisor is the same race and age range as Plaintiff raises an inference that there was no discrimination.  *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir.1996).

_____

[12] In her reply brief, Plaintiff argues that Defendant's "witness statements" are inadmissible because (1) the witnesses are themselves parties to this action, rendering their statements "self-serving"; (2) the statements constitute hearsay; and (3) the statements are not sworn.  Doc. 67 at 4-5.  The Court finds no merit to any of these arguments.  The witnesses about whom Plaintiff complains are her co-workers and supervisors, not parties to the case.  Individuals cannot be held liable under the federal anti-discrimination and anti-retaliation statutory scheme.  *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994).  Moreover, Plaintiff does not point to any particular statements that she alleges contain hearsay, and the witness declarations/affidavits are either made under penalty of perjury or affirmed to be true and complete.  *See, e.g.*, Doc. 57 at 1-2; Doc. 57 at 11, 17; Doc. 57 at 24-25; Doc. 57 at 31-32; Doc. 57 at 37-38; Doc. 57 at 45-47; Doc. 57 at 53-54; Doc. 57 at 65.

Plaintiff has failed to point to any evidence that could successfully rebut that inference.  Finally, Plaintiff has presented no evidence that Parks-Saunders was involved in the decision-making process relating to the AWOL charges.  Indeed, Park-Saunders averred that she had no involvement in Plaintiff's time and attendance matters, including the AWOL status, because those matters were handled by Jung.  Doc. 57 at 138.

2.  Plaintiff's Suspension

Plaintiff next complains that when she returned to work in May 2012 from an extended absence, she was subjected to a Weingarten meeting.  Doc. 1 at 7.  The subject of the proceeding related to concerns that Plaintiff had changed two timesheets, which ultimately led to Jung recommending that Plaintiff be suspended for two days and Adams subsequently implementing the suspension.  Doc. 57 at 8; Doc. 57 at 57.

Defendant does not dispute that a suspension without pay may constitute an adverse employment action.  *See Hypolite v. City of Houston*, 493 Fed. Appx. 597, 606 (5th Cir. 2012). As Defendant contends, however, Plaintiff still cannot make out a prima facie case because she did not identify any similarly situated employee who was treated more favorably than she was. *McCoy*, 492 F.3d at 556.  Further, while Plaintiff denies changing her time sheets, other actions also contributed to her two-day suspension for "Conduct Unbecoming a Federal Employee," namely, Plaintiff was written up for: (1) repeatedly accusing Jung of failing to do his job; (2) telling Jung that he was incompetent, malicious, lawless, and abusive; (3) questioning Jung's education, belief system, and knowledge of the law; and (4) calling Jung a "thug" and "bullshitter."  Doc. 57 at 394-97 (proposed letter of suspension dated June 8, 2012); *see also* Doc. 57 at 404 (letter implementing suspension, noting that in response to Jung's proposed suspension, Plaintiff stated that Jung was "not fit to be a lawyer, a manager or a federal

18

employee."). These acts, which are unprofessional at a minimum, demonstrate that Jung and Adams had legitimate, nondiscriminatory, non-retaliatory reasons for suspending Plaintiff, and Plaintiff has failed to produce any evidence suggesting that their rationale was pretextual. *Laxton*, 333 F.3d at 578.

### 3. Denial of Overtime

The denial of overtime opportunities may, under certain circumstances, constitute an adverse employment action. *Brooks v. Firestone Polymers, LLC*, 640 Fed. Appx. 393, 397-98 (5th Cir. 2016). However, Plaintiff has only alleged in conclusory fashion that she was denied overtime. She has not specified the nature of the opportunity, set forth any dates on which she was denied overtime, or even stated who denied her overtime and who was granted overtime and by whom. *Id.* (affirming summary judgment on discrimination claim based on alleged denial of overtime opportunities where the plaintiffs stated only in conclusory fashion that records showed that non-African-American employees had better overtime opportunities and did not cite evidence that they were qualified for specific overtime opportunities or that similarly situated, non-African-American individuals were treated differently). Conclusory allegations such as those made by Plaintiff are insufficient to overcome a motion for summary judgment. *Smith*, 827 F.3d at 417.

### 4. Denial of One Day of Sick Leave

This claim suffers from some of the same infirmities as Plaintiff's overtime claim in that she does not specify the date she was denied leave or who denied her leave. Plaintiff's conclusory allegations cannot suffice to maintain a claim of discrimination/retaliation. *Id.* Further, some courts have held that the denial of bereavement leave does not, in and of itself, constitute a materially adverse act. *See Jackson v. La. Dept. of Public Safety and Corr.*, 15-

19

00490-JJB-RLB, 2017 WL 2786493, at *11 (M.D. La. June 27, 2017); *Byerly v. Lew*, No. CIV-

15-630-C, 2016 WL 7028944, at *2 (W.D. Ok. Dec. 1, 2016).

### D.  Hostile Work Environment

Lastly, Plaintiff asserts that she was continuously subjected to a hostile work

environment based on her race, age, and national origin when (1) Park-Saunders refused to place

Plaintiff with the rest of her team and instead placed Plaintiff in the corridor for clerks and

analysts, Doc. 1 at 3; (2) two clerks harassed her by using unspecified racial slurs, staring her

down, laughing at her, turning off the lights in her office while she was working, flinging her

door open, and blocking the entrance to her office with a plant, Doc. 1 at 3-4, 10-11; and (3)

Jung ransacked her office, leaving her private information accessible to the rest of the office,

Doc. 1 at 5.[13]  Defendant asserts that the acts addressed in the complaint are not sufficient to rise

to the level of a hostile work environment.  Doc. 56 at 35-36.  Further, Defendant argues that

Plaintiff has not demonstrated any connection between the alleged harassment and her protected

status.  Doc. 56 at 36-37.

If discrimination is alleged to have taken the form of harassment creating a hostile work

environment, a plaintiff must show that: (1) she belongs to a protected class; (2) she was subject

to unwelcome harassment; (3) the harassment complained of was based on a protected

characteristic; (4) the harassment affected a term, condition, or privilege of her employment; and

---

[13] She further alleges in her response to Defendant's summary judgment motion that she
was subject to a hostile work environment when she was not informed to return to work from
furlough, and she was not permitted to work from home.  Doc. 67 at 26.  The Court considered
these claims in the discrimination context, *supra*, and concluded that they do not constitute
adverse actions.

(5) the employer knew or should have known of the harassment and failed to promptly take remedial action. *Watts*, 170 F.3d at 509.

Federal anti-discrimination statutes were not enacted to create a "general civility code" in the workplace. *Lauderdale v. Tex. Dept. of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. at 788 (1998) (citations and internal quotation marks omitted). Rather, the offensive conduct must be "extreme." *Id.* Relevant factors to consider include the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance and competence. *See Hockman*, 407 F.3d at 325-26. To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787.

Unlike in a case alleging discrete violations, a plaintiff complaining of a hostile work environment is not limited to filing suit based on events that fall within the statute of limitations because such claims are comprised of a series of separate acts that, viewed collectively, constitute a single unlawful employment practice. *Morgan*, 536 U.S. at 115. Thus, a court may consider "the entire scope of the hostile work environment claim . . . so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105.

Here, an analysis of the relevant factors demonstrates that Plaintiff has no actionable claim. Simply put, Plaintiff's complaints about her office placement, the alleged ransacking of her office, her two co-workers' rude and offensive behavior, and similar conclusory allegations do not suffice to demonstrate a hostile work environment. *See supra.* Moreover, the only

21

evidence in the record of Plaintiff being called "Jackie Chan" or "Lee" was the isolated incident when a co-worker was quoting a movie, after which he apologized and was ordered to attend sensitivity training when Plaintiff complained. Doc. 57 at 49-50; Doc. 57 at 334. In short, albeit derogatory and rude, the single act of name-calling Plaintiff alleges is nevertheless "a mere offensive utterance," *Faragher*, 524 U.S. at 787, about which Defendant "promptly [took] remedial action," *Watts*, 170 F.3d at 509.

This is to be contrasted with the facts that supported a hostile work environment finding in *EEOC v. WC&M Enter., Inc.*, 496 F.3d 393 (5th Cir. 2007). In that case, over a period of one year, the employee, an Indian Muslim, was (1) constantly called "Taliban" and referred to as an "Arab" by two co-workers who also mocked his diet and prayer rituals; (2) sporadically subjected to additional incidents of harassment, such as comments on September 11, 2001, suggesting that he was somehow involved in the terrorist attacks against the United States; (3) one co-worker's statement that the plaintiff should "just go back where [he] came from"; (4) a written warning from his supervisor, which stated that the plaintiff was acting like a "Muslim extremist"; and (5) a finance manager frequently banging on the glass partition of the plaintiff's office to startle him. 496 F.3d at 400-01. *Also* c*f. Lauderdale*, 512 F.3d at 164 (finding sexual harassment severe and pervasive when employee's supervisor called her ten to 15 times per shift for almost four months which conversations often carried sexual overtones, invited the employee to "snuggle" in Las Vegas, pulled the employee's body toward him, and repeatedly asked the employee to get coffee after work).

The present case is more analogous to *Buisson v. Bd. of Sup'rs of La. Comm. and Tech. Coll. Sys.*, 592 Fed. Appx. 237, 245 (5th Cir. 2014). In that case, the employee's supervisor called her a "chink" one time and engaged in other treatment such as (1) providing unfavorable

work schedules; (2) allowing academic freedom to black faculty only; (3) interrupting and

disrupting only non-black faculty during class; (4) removing the plaintiff's nameplate from her

office door; (5) tampering with her computer; (6) leaving her confidential information

unattended on a public printer; (7) soliciting a complaint letter against the plaintiff from one of

her students; (8) stealing her books; (9) ignoring her work suggestions; (10) refusing to pay her

an agreed-upon rate for teaching a class; and (11) relocating her office against her will.  The

appellate court upheld the dismissal of the employee's hostile environment claim.  *Id.*  Indeed,

the complained of actions in *Buisson* are some of the very actions at issue in this case.[14]

---

[14] It should also be noted that many of Plaintiff's complaints and supporting appendices constitute mere gripes and quibbles, such as (1) her opinion about which employees could "write" and which were incompetent and/or illiterate; (2) who worked hard and who didn't; (3) the allegedly manipulative and unethical behavior of Parks-Saunders and another office manager's, which behavior is unrelated to this case; (4) alleged violations of union practices and agency rules; (5) which employees had better offices than Plaintiff (and did not deserve them); (6) which employees were "loud and unprofessional" and which weren't; (7) the race of interns who were hired; (8) which babies Santa held at office holiday parties; (9) black employees "taking over the lunchroom"; (10) management's alleged refusal to investigate the vandalism of Plaintiff's car, and the like.  *See, e.g.*, Doc. 78 at 10 ("***ONLY pictures of black babies, black children, and black employees are put up at the office***") (emphasis in original); *id.* ("***Defendant does not deny that many black employees Ms. Saunders hired, are not literate or educated (so clearly they are not hired for their skills, but because they pass the COLOR AND THE RACE CRITERIA***") (emphasis in original).  Even if Plaintiff does not like working under such circumstances, from a legal standpoint, these are but petty office place grievances, differences in management style, and gossip that cannot form the basis for a sustainable hostile work environment claim.  *Stewart*, 586 F.3d at 331-32.

Moreover, while Court has reviewed the extended appendices Plaintiff filed in support of her claims, she does little in her summary judgment motion and response to Defendant's motion to tie relevant supporting material to her actionable claims.  The Court is not under any obligation to probe the record to find supporting evidence for one side or the other.  *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

Plaintiff has not successfully made out a case of hostile work environment discrimination, and summary judgment should be granted on this claim. *See McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 564 (5th Cir. 1998) ("It is a simple fact that in a workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense.").

Finally, even if the acts alleged did rise to the level of a hostile work environment, Plaintiff has presented no evidence of record to suggest that the harassment she complained of—short of the alleged name calling—was, in fact, based on her race, national origin, or age, her speculation to the contrary notwithstanding. *Watts,* 170 F.3d at 509. Indeed, the evidence, in the form of statements from Parks-Saunders, Jung, Adams, and others reflects otherwise. *See, e.g.*, Doc. 57 at 8-9 (Adams statement); Doc. 57 at 57-59 (Jung statement); Doc. 57 at 78-79, 81, 91, 93-95 (Jung supplemental statement); Doc. 57 at 394-97 (suspension letter).

## V.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court **GRANT** Defendant's *Motion for Summary Judgment*, Doc. 55, and **DENY** Plaintiff's *Motion for Summary Judgment*, Doc. 47. As acceptance of this recommendation would dispose of all of Plaintiff's pending claims, this case should then be closed.

**SO RECOMMENDED** on August 2, 2018.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE